IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| LISA R. MURPHY<br>ADC #760343 | | PLAINTIFF |
| v. | Case No. 1:18-cv-00082-KGB | |
| PAYNE, Director, ADC, *et al.*, | | DEFENDANTS |

## ORDER

Before the Court are the Proposed Findings and Recommendations submitted by United States Magistrate Judge Joe J. Volpe (Dkt. No. 7). No objections have been filed, and the time to file objections has passed. After the Proposed Findings and Recommendations were submitted, however, plaintiff Lisa R. Murphy filed several motions for leave to proceed *in forma pauperis* and filed several amended complaints (Dkt. Nos. 8, 9, 10, 11, 12, 14, 15, 16, 17). Ms. Murphy has also filed motions for status update and a motion for copies (Dkt. No. 11, 13, 19, 20).

After careful consideration of the Proposed Findings and Recommendations and the other pending filings, the Court adopts the Proposed Findings and Recommendations as its findings in all respects (Dkt. No. 7). The Court also concludes that Ms. Murphy's claims must be dismissed without prejudice because she is a "three-striker" who has failed to allege any imminent danger of harm. Accordingly, the Court denies Ms. Murphy's motions for *in forma pauperis* status and dismisses without prejudice her original complaint, amended complaints, and supplemental complaints (Dkt. Nos. 2, 8, 9, 10, 14, 15, 16, 17). The Court also denies as moot Ms. Murphy's motions for status update and motion to add defendants (Dkt. Nos. 11, 12, 19, 20). Finally, the Court grants Ms. Murphy's motion for copies (Dkt. No. 13).

I.      *In Forma Pauperis*

Ms. Murphy, an inmate at the McPherson Unit of the Arkansas Department of Correction, initially filed a *pro se* complaint under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis* (Dkt. Nos. 1, 2). Judge Volpe denied Ms. Murphy's initial *in forma pauperis* application because she failed to include a calculation sheet or a certified copy of her trust fund account statement (Dkt. No. 6). Judge Volpe gave Ms. Murphy 30 days to either pay the statutory filing fee or submit a properly completed *in forma pauperis* application. Judge Volpe recommends dismissal of this action because Ms. Murphy failed to follow his instructions (Dkt. No. 7, at 2-3).

On December 13, 2018, Ms. Murphy did file an updated application to proceed *in forma pauperis* (Dkt. No. 9). While Ms. Murphy's untimely filing may cure the problems identified with her initial *in forma pauperis* application, for the reasons discussed below, the Court concludes that Ms. Murphy's claims must be dismissed pursuant to the Prison Litigation Reform Act's ("PLRA") three-strike rule.

II.     **Ms. Murphy's Claims**

Ms. Murphy's original complaint was filed on October 19, 2018 (Dkt. No. 2). Following the submission of the Proposed Findings and Recommendations, Ms. Murphy filed three amended complaints, a supplemental complaint, and a motion to add defendants (Dkt. Nos. 8, 10, 12, 15, 17). The Court has reviewed all filings in making this determination.

A.      **Initial Complaint**

In her initial complaint, Ms. Murphy alleges that she has a heart condition and that defendants have provided her with inadequate medical care (Dkt. No. 2, at 10). Specifically, Ms. Murphy alleges that, on January 1, 2016, she was taken to "Hariss hospital for a CT" where it "was determined that she had artioclortic calsification . . . ." (*Id.*). Ms. Murphy further states that she

"continued to complain" about her medical condition for "one more year." (*Id.*, at 10-11). She avers that she was then given a heart ultrasound, "one of which showed 'regurgitations' . . . ." (*Id.*, at 11). Ms. Murphy then alleges that she "continued to complain for appox. one more year." (Dkt. No. 2, at 11). She states that "[f]inally, after threats of legal action, Dr. Hughes ordered plaintiff a heart monitor test," but she alleges that he refuses to show her the test results (*Id.*, at 11-12). She further alleges that she "has severe chest pains" and "abnormal EKG[]s pretty much every single day." (*Id.*, at 12). She claims that, when her heart disease was initially discovered, she believes that Dr. Hughes and APN Hutchinson should have set up an outside consult with a cardiologist (*Id.*, at 16).

Ms. Murphy also alleges claims arising out of events that occurred on April 1, 2018, and October 18, 2018 (Dkt. No. 2, at 12-13, 15). She alleges that, on April 1, 2018, she woke up with severe chest pains and sought emergency help (*Id.*, at 13). She claims that the officers who responded did not provide her with emergency care but instead used excessive force against her (*Id.*). She alleges that, on October 18, 2018, she "presented at medical for chest pains." (*Id.*, at 15). Ms. Murphy asserts that, "in place of receiving medical treatment . . . , she received disciplinary action." (Dkt. No. 10, at 15). She further asserts that she was not malingering and that she was written up to compel her not to seek medical attention (*Id.*, at 16).

### B. Amended Complaints And Motion To Add Defendants

Ms. Murphy's allegations in her first amended complaint mirror those in her original complaint, but in her first amended complaint she notes that she has received the results of her heart monitor test, which she previously alleged were withheld from her (Dkt. No. 8, at 12). She alleges that the results of this test show "serious heart conditions, conditions of which she has to present via a cardiologist." (*Id.*). Ms. Murphy's second and third amended complaint add "Sgt.

Rudd and C/O Deberry" as defendants (Dkt. Nos. 9, at 1; 10, at 1). Ms. Murphy's fourth amended complaint alleges the same claims but adds additional defendants (Dkt. No. 15, at 21-22). In her motion to add defendants, Ms. Murphy seeks to add the following individuals as defendants in this action: "Sgt. Omelia, C/O Skinner, C/O Bateman, Nurse Scott, Nurse Wayland, Ms. Hubbard, Dr. Hughes[,] and Nurse Albritton . . . ." (Dkt. No. 12).

### C. Supplemental Complaint

Ms. Murphy's supplemental complaint appears to relate to new claims. In her supplemental complaint, Ms. Murphy alleges that she has "complained of very serious . . . back, neck, knee, wrist[,] and stomach pain." (Dkt. No. 17, at 7). Ms. Murphy further alleges that she would present at sick call and be given a "CT scan, MRI scan, or X-ray . . . , and every single scan would show a serious need for follow up with an outside provider . . . ." (*Id.*). Ms. Murphy states that Dr. Hughes and APN Hutchinson would, rather than following up on these scans, force her to go through the same tests again, "forcing plaintiff to overexposure to unnecessary radiation." (*Id.*, at 8). Ms. Murphy avers that "[t]his over exposure to radiation has already begun to severl[y] affect plaintiffs' vision, has caused severe nerve damage to her chest wall and face . . .[a]s well as cell damage throughout her whole body." (*Id.*). Ms. Murphy further avers that she has made nurses aware of the harms she has suffered, but they have been "deliberately indifferent to [her] medical needs." (Dkt. No. 17, at 8).

Ms. Murphy separately alleges that she suffers from "severe back trauma" and "severe neck trauma" for which she has received no follow-up. She also alleges that she has carpal tunnel in both of her wrists and severe stomach pains (*Id.*). She states that "her hand[s] are almost useless" and that she has been denied any follow-up for this condition (*Id.*, at 12). Ms. Murphy also alleges various maladies related to her stomach. She alleges that she suffers from stomach pain, and she

4

also alleges that she has had stomach issues for "about 3 years" that cause her to vomit her own stool (*Id.*, at 12).

Ms. Murphy additionally alleges that she has had surgery on her left knee "due to a complete torn ACL and meniscus." (Dkt. No. 17, at 10). She states that the operating physician "forgot[]" to fix her meniscus, and in place of sending her back to surgery to have her meniscus repaired, she alleges that defendants have forced her "to have 2 CT scans as well as approx[imately] 50 x-rays." (*Id.*, at 11).

Ms. Murphy avers that she has back pain and that her back-pain causes "her legs [to] go numb and she falls" and that "she wets herself because she can't feel when she needs to go to the restroom." (*Id.*, at 11). She further asserts that an MRI taken five years ago indicates that she has a pinched nerve on her left and right sides (*Id.*, at 11-12).

Additionally, Ms. Murphy also alleges that she suffers from neck pain and migraines to the point that her "neck is so bad that she has severe migraines within 15 to 20 minutes after holding her head up" and that "[a]fter 15 to 20 minutes she has to lay her he[a]d down or hold her head up with her own hands because he neck is so weak with so much pain that her head is to[o] heavy for her neck to hold it up." (Dkt. No. 17, at 12). She alleges that she has received no follow-up for this condition (*Id.*).

Finally, Ms. Murphy alleges that her attorney's phone number "has been block[ed] for a whole year (*Id.*, at 15).

### III. Discussion

Even if the Court were to conclude that Ms. Murphy's untimely application to proceed *in forma pauperis* cured the defects identified in the Proposed Findings and Recommendations, the

Court concludes that Ms. Murphy cannot proceed *in forma pauperis* and that her claims must be dismissed because she is a "three-striker" under the PLRA.

The PLRA provides that a prisoner cannot proceed *in forma pauperis* "if the prisoner has on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Prior to filing this lawsuit on October 29, 2018, Ms. Murphy had incurred three "strikes" for actions she had previously filed in the Eastern District of Arkansas. *See Murphy v. Kelley, et al.*, 1:15-cv-00044-JM (E.D. Ark. Apr. 2, 2015); *Murphy v. Fisk, et al.*, 1:15-cv-00050-BSM (E.D. Ark. July 24, 2015); *Murphy v. Faust, et al.*, 1:14-cv-00127-JM (E.D. Ark. Nov. 18, 2014). Nevertheless, Ms. Murphy may proceed *in forma pauperis* if she falls under the "imminent danger" exception to the three strikes rule. 28 U.S.C. § 1915(g) (providing that prisoners with three strikes should be granted permission to proceed *in forma pauperis* if they are "under imminent danger of serious physical injury"); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (explaining that the exception applies only if the prisoner is in imminent danger "at the time of filing" and that "[a]llegations that the prisoner has faced imminent danger in the past are insufficient"). The Eighth Circuit Court of Appeals has been reluctant to apply the imminent danger exception unless the alleged ongoing danger subjects the prisoner to risk of a truly serious physical injury. *Compare Ashley*, 147 F.3d at 717 (applying the imminent danger exception when a prisoner alleged that prison officials continued to place him near his enemies despite two prior stabbings), *with Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (refusing to apply the imminent danger exception when a plaintiff alleged that prison

officials made him work outside in extreme weather conditions that did not result in any serious physical injuries).

The denial of appropriate medical care may, under certain circumstances, present an "imminent danger" sufficient to create an exception to the three-strikes policy and allow a prisoner to proceed *in forma pauperis*. *See Partin v. Harmon*, 113 Fed. App'x 717, 718 (8th Cir. 2004) (unpublished) (per curiam) (holding that plaintiff satisfied the imminent danger exception where he alleged that "he was exposed to raw sewage; denied treatment for tuberculosis, prostate cancer, and colon cancer; deprived of prosthetic support boots; denied medical care for an injured knee and ankle; and forced to work against medical restrictions"); *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002) (holding that plaintiff's allegation that a spreading infection in his mouth constituted an imminent danger of serious physical injury);[1] *see also Brown v. Wolf*, 705 Fed. App'x 63, 66-67 (3d Cir. 2017) (holding that allegation by prisoner that the prison was "refusing him *any* medical treatment for his Hepatitis C, if true, puts [plaintiff] in imminent danger of serious physical injury.") (emphasis in original); *but see Martin*, 319 F.3d at 1050-51 (finding that plaintiff's "conclusory assertion that defendants were trying to kill [plaintiff] by forcing him to work in extreme conditions despite his blood pressure condition" did not satisfy the imminent-danger exception).

### A. Original And Amended Complaints

In her original and amended complaints, Ms. Murphy alleges that she has suffered from a heart condition for over three years and that certain defendants have provided her with inadequate medical care in response to her complaints. Ms. Murphy alleges that she was denied medical care

---

[1] The concurrence in *McAlphin* "tend[ed] to doubt that McAlphin's allegations of a mouth infection constitute[d] a 'serious physical injury.'" *McAlphin*, 281 F.3d at 711 (Bye, J., concurring) (citing 28 U.S.C. § 1915(g)).

7

during incidents that occurred on April 1 and October 18, 2018 (Dkt. No. 2, at 12-13, 15). As to her alleged heart condition, Ms. Murphy alleges that in 2016 she was taken to a hospital and given a CT scan (*Id.*, at 10). She further alleges that, a year later, she was given a heart ultrasound (*Id.*, at 11). She additionally states that, a year after the heart ultrasound, Dr. Hughes ordered Ms. Murphy to wear a heart monitor (*Id.*, at 11-12). Ms. Murphy disagrees with her current medical regimen, arguing that she should be referred to a cardiologist. Finally, Ms. Murphy alleges that she has chest pains and abnormal EKGs "pretty much every single day." (*Id.*, at 12).

Ms. Murphy's claims arising out of the alleged incidents that occurred on April 1 and October 18, 2018, are insufficient to establish an imminent danger of serious physical injury given that those incidents occurred months prior to the filing of this case. As to Ms. Murphy's alleged heart condition, her allegations demonstrate that she was not in imminent danger of serious physical injury at the time she filed her complaint. First, given the medical care she is allegedly receiving, it is not clear to the Court that Ms. Murphy's alleged heart condition poses a risk of serious physical injury. Additionally, Ms. Murphy alleges that she has suffered from a heart condition for over three years and that she has received medical treatment for her heart condition over those three years. Ms. Murphy does not dispute that she is receiving medical attention, but instead she merely disputes the findings and quality of the treatment she is receiving. Given that Ms. Murphy is receiving medical attention for her alleged heart condition, the Court cannot conclude, based upon these allegations, that Ms. Murphy is facing a risk of serious physical injury due to her heart condition.

Further, the allegations in Ms. Murphy's original and amended complaints fail to satisfy the requirement that she is under imminent danger of serious physical injury. The only ongoing harm alleged in Ms. Murphy's original and amended complaints is that she suffers chest pains and

abnormal EKGs "pretty much every single day." (Dkt. No. 2, at 12). Given that Ms. Murphy has alleged that she has lived with these symptoms over the past three years and has received medical attention for her alleged condition during that time, the Court cannot conclude that Ms. Murphy has alleged that she is in imminent danger of serious physical injury due to her alleged heart condition.

### B. Supplemental Complaint

The Court also concludes that Ms. Murphy's supplemental complaint fails to allege that she is under imminent danger of serious physical injury. To summarize, in her supplemental complaint, Ms. Murphy alleges that she suffers from a variety of maladies, including: over-exposure to radiation; severe back and neck trauma; carpal tunnel; stomach pain; a torn meniscus; back pain; neck pain and related migraines; and stomach issues (Dkt. No. 17, at 7-15). She also asserts in her supplemental complaint that her attorney's phone number has been blocked (*Id.*, at 15). These allegations are insufficient to meet the standard for § 1915(g)'s imminent-danger exception.

First, Ms. Murphy alleges that defendants are improperly forcing her to proceed through the "three sick call process" and that, as a result, she has suffered from over-exposure to radiation due to multiple CT, MRI, and x-ray scans (*Id.*, at 7). Again, these allegations show that Ms. Murphy is receiving medical attention for her complaints, thus negating any allegation that defendants have been indifferent to her medical needs. Further, Ms. Murphy's conclusory allegations of radiation damage to her nerves and vision are insufficient to satisfy the imminent-danger exception. Ms. Murphy does not allege that defendants refuse to treat Ms. Murphy's radiation-related ailments nor does she allege that she is in further danger due to her radiation-

related ailments. Accordingly, Ms. Murphy has failed to allege an imminent risk of serious physical injury relating to her radiation-related injuries.

Similarly, Ms. Murphy's conclusory claims of "severe back trauma," "severe neck trauma," carpal tunnel, and stomach pain are insufficient to satisfy the imminent-danger exception. In each of these claims, Ms. Murphy complains of a lack of follow-up by her medical providers, yet she also alleges that defendants have provided multiple scans in response to her complaints about these ailments. As to her claims about alleged back and neck trauma, Ms. Murphy claims no ongoing or imminent harm arising out of these alleged injuries. Those allegations are therefore insufficient to invoke the imminent-danger exception. As for her alleged carpal tunnel, Ms. Murphy alleges that "her hand[s] are almost useless" and that she has been denied any follow-up (Dkt. No. 17, at 12). This allegation, which states that her hands are "almost" useless, does not raise the specter of an imminent serious physical injury. Additionally, Ms. Murphy alleges that she has received "70 x-rays, 3 CT scans, as well as 3 MRI scans" in response to her alleged stomach pain (*Id.*, at 11). Given that Ms. Murphy concedes that she has received medical care for her alleged stomach pain and because she fails to elaborate on how her stomach pain poses a risk of serious physical injury, the Court concludes that she has failed to allege that an imminent danger of serious physical injury exists regarding her alleged stomach pain.

Ms. Murphy's allegations concerning her meniscus are insufficient to show that she is in imminent danger of serious physical injury. She alleges that, five years ago, she had surgery on her left knee due to her meniscus and torn ACL and that the operating doctor forgot to fix her meniscus. Ms. Murphy does not, however, explain how this alleged injury places her in danger of a serious injury. Even if these allegations were sufficient to establish some risk of a serious

physical injury, this incident allegedly occurred five years ago, which is not sufficient to establish an *imminent* danger of serious physical harm.

Ms. Murphy's allegations of back pain are also insufficient to invoke the imminent-danger exception. Specifically, she alleges that "her legs go numb and she falls, [and] she wets herself because she can't feel when she needs to go to the restroom." (*Id.*, at 11). She alleges that an MRI, taken five years ago, shows that she has pinched nerves in her back. Again, given that Ms. Murphy alleges that she has received medical attention for her back pain—the MRI scan—and because she has apparently lived with her back pain for five years without additional injury, the Court concludes that Ms. Murphy's allegations of back pain are insufficient to satisfy the imminent-danger exception.

As to her allegations of neck pain and migraines, Ms. Murphy's only allegation on this point is that her "neck is so bad that she has severe migraines within 15 to 20 minutes after holding her head up" and that "[a]fter 15 to 20 minutes she has to lay her he[a]d down or hold her head up with her own hands because her neck is so weak with so much pain that her head is to[o] heavy for her neck to hold it up. Still no follow up." (*Id.*, at 12). Except for the conclusory statement that she has received no follow-up for these conditions, Ms. Murphy does not allege that defendants' conduct purportedly led to or exacerbated these conditions. Further, although she describes uncomfortable and perhaps painful conditions, Ms. Murphy has failed to allege how these conditions are likely to lead to a severe physical injury. Accordingly, the Court concludes that Ms. Murphy's allegations regarding neck pain and migraines are insufficient to invoke the imminent-danger exception.

As to Ms. Murphy allegations that stomach issues for "about 3 years" have led her to vomit her own stool, the Court concludes that these conclusory allegations do not rise to the level of

showing an *imminent* danger of serious physical harm given that Ms. Murphy has allegedly lived with the conditions for three years and that she does not describe with any specificity how the alleged conditions purportedly adversely impact her health.

Finally, the Court concludes that Ms. Murphy's allegation that her attorney's phone number has been blocked is not sufficient to establish that Ms. Murphy is facing an imminent danger of serious physical injury.

Accordingly, as Ms. Murphy has not alleged sufficient facts to show that she is in imminent danger of serious physical injury, the Court denies her motions for *in forma pauperis* status and dismisses without prejudice her complaint, amended complaints, and supplemental complaints for failure to pay the filing fee required to proceed with her complaint (Dkt. Nos. 2, 8, 9, 10, 14, 15, 16, 17).

### IV. Other Pending Motions

Also pending before the Court are Ms. Murphy's motion for status update, motion to add defendants, and motion for copies (Dkt. Nos. 11, 12, 13, 19, 20). The Court denies as moot Ms. Murphy's motion for status update, as this Order explains the status of this matter, and denies her motion to add defendants, as the Court determines for the reasons explained in this Order that she may not proceed with her action at this time (Dkt. Nos. 11, 12). The Court grants Ms. Murphy's motion for copies and directs the Clerk of Court to mail to Ms. Murphy a copy of the docket sheet in this action (Dkt. No. 13).

### V. Conclusion

It is therefore ordered that:

1. The Court adopts the Proposed Findings and Recommendations in their entirety as the Court's findings in all respects (Dkt. No. 7).

2. Ms. Murphy's motions for leave to proceed *in forma pauperis* are denied (Dkt. Nos. 9, 14, 16).

3. Ms. Murphy's complaint, amended complaints, and supplemental complaint are dismissed without prejudice (Dkt. Nos. 2, 8, 10, 15, 17).

4. Ms. Murphy's motion for status update and motion to add defendants are denied as moot (Dkt. Nos. 11, 12, 19, 20).

5. Ms. Murphy's motion for copies is granted (Dkt. No. 13).

6. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*, appeal from any Order adopting this recommendation and the accompanying Judgment would not be taken in good faith.

7. Ms. Murphy is given 30 days to reopen the case by paying the $400.00 filing fee in full and filing a motion to reopen that references this case number.

So ordered this the 7th day of May, 2019.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge